```
                 UNITED STATES DISTRICT COURT
                          FOR THE
                     DISTRICT OF VERMONT


United States of America       :
                               :
         v.                    :    File No. 1:03-CR-00068
                               :
Keith Morris                   :
```

### MAGISTRATE JUDGE'S REPORT & RECOMMENDATION
(Paper 147)

Petitioner Keith Morris has filed a motion under 28 U.S.C. § 2255 to vacate and set aside the revocation of his conditions of supervised release and four month sentence of incarceration.  He argues that he was denied effective assistance of counsel at his revocation hearing.  The government has opposed the motion, arguing Morris has no constitutional right to counsel at a revocation hearing and even if such a right existed, Morris's counsel was effective.

For the reasons set forth below, I recommend Morris's motion be DENIED.

### I. BACKGROUND

Morris is currently on supervised release after serving five months in prison stemming from a June 23, 2004 conviction for possession with intent to distribute

marijuana.  He was released from custody on December 17, 2004 and began serving a three year term of supervised release.

On November 13, 2006, United States Probation Officer Daniel Mangan filed a "Petition on Probation and Supervised Release," alleging that Morris had violated conditions of his supervised release.  (Paper 137).  The violations of supervised release alleged in the petition were:

1.  On August 7, 2005, in Brookfield, MA, Morris operated a motor vehicle while under the influence of alcohol, a misdemeanor, as evidenced by criminal complaint and conviction entered in East Brookfield District Court.

2.  On October 10, 2006, in the town of Elmore, VT, Morris operated a motor vehicle while his license was under suspension, a misdemeanor, in violation of 23 V.S.A. 674.

3.  Morris submitted a report for the month of August 2005, which was not truthful in that he responded "No" to the questions:  Were you questioned by any law enforcement officer? and Where you arrested or named as a defendant in any criminal case?

4.  Morris failed to report to the probation officer his police contact and arrest in Brookfield, MA within 72 hours.

5.  Morris failed to report to the probation officer his citation for DLS in Elmore, VT within 72 hours.

6.  On August 7, 2005, Morris consumed an alcoholic beverage, as evidenced by a criminal complaint and by his own admission to the probation officer.

(Id.).  The Court issued a summons for Morris to report for a hearing to show why his supervised release should not be revoked.

At the December 12, 2006 revocation hearing the Court appointed Frank Twarog to represent Morris.  (Paper 151 at 3).  Twarog had represented Morris in the underlying criminal case.  Apparently, Morris had concealed all of his violations from Twarog, who sought this Court's permission for Morris to travel internationally in June 2006.  (Id. at 2).  In that motion, Twarog had represented that Morris had complied with all terms of supervised release.  (Paper 135-1 at 1).  Immediately before the hearing began, Twarog, Mangan and Assistant United States Attorney Darrow discussed the sentence the government would recommend, which was a period of incarceration at or slightly below the Guideline range of 5 to 11 months.  (Paper 147-1 ("Transcript") at 4).  At the start of the hearing Twarog told the Court that Morris wanted to admit the violations.  (Id. at 4).  The Court then advised Morris that he had the right to contest the petition and explained that if Morris admitted the allegations and the Court found he had violated his supervised release that the hearing would

proceed to disposition and sentencing. (Id.).  Morris stated that he understood how the hearing would proceed. (Id.).  Morris and Twarog presented facts in mitigation of Morris's situation, but offered no evidence in support of those facts.  The defendant sought continued supervised release with some added punishment short of incarceration. (Id. at 12-14).  After expressing its dissatisfaction with Morris's serial violations[1] and lack of truthfulness, the Court revoked Morris's supervised release and imposed a four month sentence.  The Court agreed to delay Morris's surrender date and ordered Morris to report to serve his sentence on January 9, 2007.  (Paper 147-2, at 24). On December 21, 2006, Morris moved to stay his sentence pending the resolution of his motion to correct sentence under Fed. R. Crim. P. 35(a). (Paper 143).  The Court granted Morris's stay on January 1, 2007, rescheduling his surrender until March 13, 2007.  On January 19, now represented by Attorney Jason Sawyer, Morris withdrew his motion to correct his sentence and request for stay. (Paper 146).

---

[1] The Court noted that in addition to the listed violations Morris had used marijuana in May 2005 and cocaine in September-October 2005 for which the Court took no action. (Paper 145-2, at 14-15).

4

On February 22, 2007, Morris filed this § 2255 motion to vacate and set aside the Court's revocation and sentence, claiming ineffective assistance of counsel at the revocation hearing.  Morris filed a second motion to stay his sentence on March 2, 2007 pending the resolution of this motion.  The Court granted another stay and rescheduled his surrender for April 17, 2007.

## II. DISCUSSION

### A. Legal Standard

Section 2255 is intended to remedy fundamental defects in a criminal prosecution.  United States v. Addonizio, 442 U.S. 178, 185 (1979).  As a "collateral attack on a final judgment in a criminal case," a court may grant relief only for constitutional errors, lack of jurisdiction or an error of law constituting a fundamental defect, which inherently results in a complete miscarriage of justice.  Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996).  If there was no direct appeal, a § 2255 motion is procedurally barred unless it is based on constitutional or jurisdictional claims or would result in a "complete miscarriage of justice."  Johnson v. United States, 313 F.3d 815, 817 (2d Cir. 2002); see also United States v.

5

Olano, 507 U.S. 725, 736 (1993) (defining "miscarriage of justice" in collateral-review jurisprudence as actual innocence).  A defendant may not assert a claim in a § 2255 motion that he failed to raise on direct appeal unless the defendant shows cause for the omission and prejudice resulting therefrom, or actual innocence.  See Bousley v. United States, 523 U.S. 614, 622 (1998); Campino v. United States, 968 F.2d 187, 190-91 (2d Cir. 1992).  Claims for ineffective assistance of counsel, however, are generally excepted from the cause and prejudice requirement and may be brought for the first time in a § 2255 motion.  Massaro v. United States, 538 U.S. 500, 509 (2003).

B. Right to Counsel

    Morris claims he was denied his Sixth Amendment right to effective assistance of counsel at the revocation hearing; the government claims he had no such constitutional right to counsel.  The Sixth Amendment right to effective assistance of counsel is available only in critical stages of criminal prosecutions; supervised release proceedings are not deemed such a "stage" for purposes of the Sixth Amendment.  United States v. Meeks, 25 F.3d 1117, 1121 (2d Cir. 1994), abrogated on other

grounds by Johnson v. United States, 529 U.S. 694 (2000) (citing Gagnon v. Scarpelli, 411 U.S. 778, 787-88 (1973) and noting supervised release proceedings are virtually the same as probation proceedings in Gagnon).  Morris's right to counsel at his revocation hearing was statutory.  18 U.S.C. § 3006A(a)(1)(E).  Despite this statutory right, however, where there is no constitutional right to counsel, there can be no claim of constitutionally ineffective assistance of counsel.  See Borrego v. United States, 975 F. Supp. 520, 523 (S.D.N.Y. 1997) (no ineffectiveness claim based on counsel's performance if no constitutionally guaranteed right to counsel); see also Wainwright v. Torna, 455 U.S. 586, 587-88 (1982) ("Since respondent had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel").  Because Morris's § 2255 motion is limited to his claim that Twarog was constitutionally ineffective at the revocation hearing, his motion should be denied.

C. Ineffective Assistance of Counsel

Even assuming the same standard for evaluating effective assistance of counsel applies to Morris's statutory right to adequate representation, the Court finds Twarog's conduct was reasonably competent and that any

alleged deficiencies in no way prejudiced Morris or impacted the outcome of the revocation hearing.

"[T]he proper standard for attorney performance is that of reasonably effective assistance." <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. <u>See</u> <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 374 (1986). Thus, a defendant must establish (1) that counsel made errors so serious that he was deprived of reasonably competent representation and (2) that counsel's deficient performance prejudiced the defense. <u>See</u> <u>Hernandez v. United States</u>, 202 F.3d 486, 488 (2d Cir. 2000) (citing <u>Strickland</u>, 466 U.S. at 687-91)). Because Morris had counsel, his claim is one of "actual ineffectiveness" in which he alleges Twarog failed to render "adequate legal assistance." <u>Strickland</u>, 466 U.S. at 686; <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 344 (1980) (actual conflict of interest adversely affecting lawyer's performance renders assistance ineffective).

To satisfy the first prong of the <u>Strickland</u> test, Morris must show that Twarog's performance fell below an

8

objective standard of reasonableness.  Morris claims that Twarog failed to adequately prepare for his supervised release hearing and failed to perform adequately during the hearing.  Morris alleges that prior to the hearing Twarog should have investigated the government's recommended sentence, learned of all of the alleged violations, advocated for a non-incarcerative sentence, and prepared a mitigation defense in case the Court revoked his supervised release. (Paper 147-1 at 7-8).  Morris contends that upon learning of the government's intended recommendation at the hearing, Twarog should not have advised him to admit to the violations, should have requested a continuance to prepare for a final revocation hearing pursuant to Fed. R. Crim. P 32.1(b)(1) when it was clear that the Court was proceeding to the punishment phase of the hearing, should have put on an organized mitigation defense, and should have moved for the Court to reconsider the sentence as imposed.  (Id. at 8-11).

     In considering an actual ineffectiveness claim, the Court must evaluate the reasonableness of the challenged conduct on the facts presented.  Strickland, 466 U.S. at 690.  In addition, the Court must presume that counsel has "rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment;" and that "counsel's conduct f[ell] within the wide range of reasonable professional assistance." Id. at 689, 690. Finally, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." Id. at 691.

The Court finds Twarog's conduct fell within reasonable professional assistance because Twarog's conduct before and during the hearing was both objectively reasonable in light of the factual circumstances and in line with Morris's choices and the information he supplied.

Morris claims that he discussed with Mangan the possibility of house arrest as punishment for the violations, but he alleges that Twarog erred both in not learning that house arrest would not be the actual recommendation and that Morris had two drug related violations. (Paper 147-1, at 3-5). Twarog's inability to speak to Mangan prior to the hearing was not unreasonable since he was able to talk with him immediately prior to the

hearing.[2] (Id. at 4).  Moreover, Morris offers no evidence that prior consultation with Mangan would have altered Mangan's recommendation or the Court's decision.  Given the discussions between Twarog, Mangan and Darrow, it is reasonable to find that Twarog attempted negotiations and proceeded in his representation of Morris with any new information he received from Mangan and Darrow.  In addition, Twarog's discovery at the hearing that Morris had two drug violations in 2005 fails to show Twarog's ineffective assistance since Morris failed to disclose them to Twarog, thereby preventing Twarog from fully preparing for the hearing.

It appears from the hearing transcript that the defense strategy was to rebut the government's recommendation with statements from Twarog and Morris. Morris addressed the Court after the government's recommendation and presented facts in mitigation of his alleged violations.  This strategy, however sound, was indicated at the start of the hearing and Morris not only consented to it, but participated in it.  (Transcript at 2) (Twarog stating Morris was "eager to address the Court

---

[2] The hearing transcript reflects Twarog had been "playing phone tag" with Mangan about trying to get a deal together before the hearing.  (Paper 145-2, at 2).

11

following a recommendation by Mr. Mangan."). The fact that no evidence was submitted does not persuade this Court that Twarog provided ineffective assistance. It is reasonable that the statements from Twarog and Morris were the best defense under the circumstances. To survive an ineffectiveness claim, Twarog's conduct need not be the best, but merely "within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 690.

Morris's admissions eliminated the need for the Court to hold a probable cause hearing and allowed the Court to proceed to the final revocation hearing. <u>See</u> Fed. R. Crim. P. 32.1(b)(1)(A), (b)(2). Both Twarog and Morris, in response to the Court's questions, indicated that Morris was prepared to admit the alleged violations. Morris's statements that he understood the consequences of his admissions and that the Court could find a violation and proceed to sentencing constituted a waiver of the preliminary revocation hearing. (Transcript at 4). There is no evidence that Morris wanted the Court to make only a probable cause finding and delay sentencing for a final revocation hearing. Indeed, a defendant cannot wait to find out the sentence before waiving the probable cause hearing. Although Morris argues that Twarog erred in

12

advising him to admit the allegations, he offers no explanation that he had any basis to contest the allegations.  Because the violations, including a misdemeanor conviction, a traffic violation and documents Morris submitted to the Probation Office, were matters of public record or documentary proof, Morris had no grounds to contest them.

Given Morris's informed participation in the hearing, the Court is not persuaded that Twarog's conduct fell below the objective reasonable standard.  Even assuming Twarog's performance fell below the acceptable standard, however, Morris suffered no prejudice.  The Court is not convinced that but for Twarog's alleged errors the result of the proceeding would have been different.  <u>Chin v. United States</u>, 224 F.3d 121, 125 (2d Cir. 2000).  There was no indication that the Court would have continued Morris's supervised release if a better prepared mitigation defense was presented at a final revocation hearing.  Specifically, the Court imposed incarceration because it was dissatisfied with Morris's serial violations and was concerned Morris was not getting the message he should from supervised release and needed to "learn something."  (Transcript at 19-21).  Accordingly, the Court finds that both prongs of

the Strickland test were satisfied in this case and that the revocation hearing was fundamentally fair. Id. at 697 ("Ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.").

## CONCLUSION

For the foregoing reasons, I recommend that Morris's motion be DENIED (Paper 147).

Dated at Burlington, in the District of Vermont, this 26th day of March, 2007.

> /s/ Jerome J. Niedermeier
> Jerome J. Niedermeier
> United States Magistrate Judge

Any party may appeal this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, a written statement of appeal which shall specifically identify portions of the proposed findings, recommendations or report objections. Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rule 72.1; 72.3, 73.1; 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(b), 6(a) and 6(e).